Hampton Corporation, a California corporation v. Commissioner.
Hampton Corp. v. Commissioner
Docket No. 363-63.
United States Tax Court
T.C. Memo 1964-150; 1964 Tax Ct. Memo LEXIS 185; 23 T.C.M. (CCH) 899; T.C.M. (RIA) 64150; June 1, 1964
J. Warren Manuel, Financial Center Bldg., Oakland, Calif., for the petitioner. Leo McLaughlin and Leslie M. Hartman, for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined deficiencies in income tax of petitioner in the amounts of $12,386.85 for the fiscal year ending February 29, 1960 and $14,822.35 for the fiscal year ending February 28, 1961. The sole question for decision is whether the salaries paid by petitioner to its president and secretary constitute reasonable compensation for services rendered. Findings of Fact Some of the facts have been stipulated, and, as stipulated, are incorporated herein by reference. Petitioner *186 is a California corporation. It filed its corporate income tax returns for the fiscal years ending February 29, 1960 and February 28, 1961 with the district director of internal revenue, San Francisco, California. Petitioner operates under the name of The Ardes Company. It does business with customers located in the western part of the United States, principally in San Francisco and vicinity. It is engaged in the business of supplying imprinted products to banks and other financial institutions. It specializes in the manufacture of passbooks and checkbook covers. Some of its orders run as high as $30,000, $40,000, or $50,000. The products it sells are made to order and it maintains no inventory of ready-made merchandise. During the taxable years it had about 27 employees who were all union members, and it occupied a leased building containing about 8,500 sq. ft. It did not employ any salesmen. Salesmen in the printing business who sell savings account passbooks or checkbook covers receive a commission of ten percent of the gross sales price. Approximately 50 percent of petitioner's production is sold to banks and other financial institutions directly, and the other 50 percent is *187 sold to suppliers and large printing concerns who in turn sell to banks and other financial institutions. The Bank of America and the Wells Fargo Bank are two "major" customers of petitioner. Orders for less than $1,000 are frequently made by purchasing agents of petitioner's customers without written request for bids. Specifications accompanying written requests for bids are often prepared for banks by petitioner, and, in the case of the Bank of America, it prepares about 90 percent of such specifications. The Ardes Company was commenced about 1936 by a partnership which employed George Hampton as foreman. On June 1, 1940, Edith T. Hampton and her first husband, A. J. Grant, purchased the business from the partnership for approximately $5,400. About a year later A. J. Grant and Edith Hampton (then Grant) separated and he left the business. She operated it as a sole proprietorship from 1941 to March 31, 1943 when George Hampton purchased a 49 percent interest for $2,500. In 1950 George Hampton purchased another 1 percent interest and they became equal partners. They were married in February, 1953, and the business was incorporated on March 1, 1956, when petitioner was formed. *188 During the years ending February 28, 1957 through February 28, 1961, George Hampton and Edith T. Hampton each owned 50 percent of petitioner's stock. The officers of petitioner during those years were George Hampton, president, and John E. Helm, vice-president, Edith T. Hampton, secretary-treasurer, and Winifred T. Parker, assistant secretary-treasurer. George and Edith Hampton, and John Helm were also members of petitioner's board of directors. At a meeting of the board of directors of petitioner on April 7, 1956, the salaries of George Hampton and Edith T. Hampton were set at $650 per month for each "plus an additional sum based on a percentage of business done". At later meetings in 1956, their salaries were "set at 7 1/2 percent of the gross annual sales for each of them" (with a guaranteed minimum of $1,000 a month each), and salaries based on this percentage of sales have been paid to them during the years ending February 28, 1957 through February 28, 1961. Other officers and employees received a fixed salary plus a bonus at the end of the year. In 1943, the first year George and Edith Hampton operated the business of The Ardes Company as partners, its sales were less than *189 $30,000. Thereafter the sales, both before and after petitioner was incorporated, steadily increased and for the fiscal year ended February 28, 1961 they amounted to $456,696.83. During that period a substantial amount of machinery and equipment was purchased, employees were trained to operate such machinery and equipment, and the company established a reputation among its customers for producing quality merchandise and rendering good service. Its nearest important competitors are two companies located in Los Angeles, California. In San Francisco and vicinity there were some printing companies that sold the same products as petitioner, but 90 percent of such products were manufactured by petitioner. During the past six or eight years the number of banks and savings and loan companies in the San Francisco area has increased. George Hampton, the president of petitioner, worked long hours during the taxable years and averaged about 65 hours a week. He has had about 35 years experience in the type of business engaged in by petitioner. He looked after the sales, figured production costs, prepared the bids made to customers, kept track of the delivery dates of the various orders and posted *190 those dates in the shop, checked production, interviewed salesmen of raw materials, prepared specifications, trained male employees, supervised the operation of machines, investigated any new machinery that might be used by petitioner and selected about 90 percent of the equipment purchased, made calls on banks and other financial institutions to solicit business, and dealt with the employees' union. During the taxable years Edith Hampton, the secretary of petitioner, worked long hours. She was the office manager of petitioner. She prepared minutes of monthly meetings of the board of directors, interviewed salesmen of suppliers of raw materials, handled personnel matters, trained new women employees, screened telephone calls so that production would not be interrupted, arranged vacation schedules for employees, assisted husband in checking production, production costs, and in the preparation of bids and specifications, and made some calls on customers when necessary "to straighten out samples". Winifred T. Parker, the assistant secretary-treasurer of petitioner, assisted her in the performance of her duties. John E. Helm, the vice-president of petitioner, is the manager of The *191 Ardes Company and the son-in-law of George Hampton. He has been with the company since 1945. He was paid a salary and bonus totaling $19,995 for the year ending February 29, 1960, and $19,655 for the year ending February 28, 1961. He renders services of a general and all-inclusive nature. He participates in the making of management decisions and helps plan the "future" of the business. At times he is involved in the purchase of raw materials and in the promotion and solicitation of business. He "does practically everything". He is an expert mechanic, keeps the machines in repair, and helps wherever he is needed. He is also an expert on plastics. About eight years ago petitioner began to make plastic checkbook covers and during the taxable years they were a big item. Helm made more calls on customers during those years than were made by Edith Hampton. Most of the calls, however, were made by George Hampton. Petitioner's sales, Federal income taxes and net income for the years ended February 28, 1957 through February 28, 1961, and its earned surplus at the end of each of those years were as follows: Fiscal Year
Net
Earned
Ended
Sales
Income
Surplus
Feb. 28, 1957
$294,414.00
$15,013.36
$15,013.36
Feb. 28, 1958
266,267.00
9,995.56
25,008.92
Feb. 28, 1959
260,741.44
9,039.06
34,047.98
Feb. 29, 1960
425,472.43
25,235.06
59,995.54
Feb. 28, 1961
456,696.83
27,305.51
87,301.05
*192 Petitioner has never paid a dividend. The salaries paid by petitioner to its officers during the years ended February 28, 1957 to February 28, 1961, inclusive, were as follows: Total
Fiscal Year
Officer
George
Edith T.
John E.
Winifred
Ended
Salaries
Hampton
Hampton
Helm
T. Parker
Feb. 28, 1957
$62,601.86
$22,081.05
$22,081.05
$14,600.00
$3,839.76
Feb. 28, 1958
58,520.66
19,970.03
19,970.03
14,600.00
3,980.60
Feb. 28, 1959
78,656.94
19,555.61
19,555.61
15,625.00
4,365.11
Feb. 29, 1960
89,552.91
31,910.43
31,910.43
19,995.00
5,737.05
Feb. 28, 1961
94,630.41
34,252.26
34,252.26
19,655.00
6,470.89
In its returns for the years ended February 29, 1960 and February 28, 1961, petitioner deducted as salary the amounts paid to George Hampton and Edith T. Hampton during each of those years. Respondent determined that the amounts paid to each of them was excessive to the extent of $11,910.43 for the year ended February 29, 1960, and to the extent of $14,252.26 for the year ended February 28, 1961. A reasonable allowance for salary for George Hampton and Edith T. Hampton for services rendered by each of them to petitioner *193 during the years ended February 29, 1960 and February 28, 1961 is $25,000 per annum. Opinion RAUM, Judge: Petitioner contends that the respondent erred in reducing the amounts claimed by it as deductions for salaries paid to its president and secretary during each of the taxable years. Section 162(a)(1) of the 1954 Code provides that there may be deducted as an ordinary and necessary expense "a reasonable allowance for salaries or other compensation for personal services actually rendered." Petitioner is a close family corporation. All of its stock is owned in equal proportions by George and Edith Hampton, husband and wife, each of whom received during the taxable years substantial amounts as salaries which were based on a percentage of gross sales. In these circumstances special scrutiny must be given to such salaries, because of the lack of arm's length bargaining, to determine whether they represented reasonable allowances for services actually rendered or were to some extent a distribution of profits or accumulated earnings in the guise of salaries. The evidence discloses that the petitioner and a predecessor partnership specialized in the manufacture and sale of passbooks, *194 checkbook covers and related items for banks and other financial institutions; that shortly after petitioner was incorporated in March 1956 George and Edith Hampton became equal owners of its stock and two of its three directors; that in May 1956 their salaries were set at 7 1/2 percent of the gross annual sales of petitioner; that the sales of the business steadily increased both during the period it operated as a partnership and since it was incorporated and the company acquired a reputation for producing quality products and rendering good service; that the success of the business during the taxable years and since petitioner was incorporated was due in a large measure to the efforts of the Hamptons and those of John E. Helm, petitioner's vice president; that the salaries paid the Hamptons and two other officers absorbed a substantial portion of petitioner's annual profits; that its net income, after officers' salaries, does not bear a correlation to the advancement in its sales; and that it has never paid a dividend. Petitioner contends that 7 1/2 percent of sales was selected as salary for each of the Hamptons to give them an incentive to increase its business; that salesmen *195 selling products similar to those manufactured by it receive commissions of 10 percent of sales; that the Hamptons were responsible for the development and success of the business; that the business was a highly specialized one which required unusual ability and skill of the Hamptons; that they worked long hours both before and after the business was incorporated; and that the amounts paid them as salaries during the taxable years represented reasonable compensation for their services. The evidence convinces us that the amounts of $31,910.43 for the fiscal year 1960 and $34,252.26 for the fiscal year 1961 deducted by petitioner as salaries for each of the Hamptons in its returns for those years were excessive and that the amount of $20,000 allowed by the respondent as reasonable compensation for each of these officers was not adequate. We are not impressed by petitioner's contention that the percentage-of-sales compensation arrangement was selected for the Hamptons in order to give them an incentive to increase its business. Obviously they needed no such incentive inasmuch as each of them owned 50 percent of its stock and would receive 50 percent of its profits either as salaries *196 or dividends. In these circumstances the decision of the Hamptons to base the amounts they were to receive as salaries on a percentage of sales strongly suggests that the receipt of reasonable compensation for their services was not their sole objective and that they were not overlooking the possibility that by this arrangement they could drain off some of the corporate profits in the guise of salaries. We are also not impressed by petitioner's attempt to justify the payment of 7 1/2 percent of sales to the Hamptons on the ground that salesmen for other companies selling similar products received 10 percent of gross sales price as commission. A percentage paid to a salesman on sales made by him is quite different from percentages of a corporation's gross sales paid to its stockholder-officers for their general services in behalf of the corporation. (C.A. 7). The situations are not comparable. Nor was any attempt made by petitioner to show that amounts such as those paid to the Hamptons were comparable to those paid during the taxable years by comparative businesses, and it has not proved that the salaries *197 paid to the Hamptons during those years were not excessive. Nevertheless the evidence it presented does convince us that $20,000 per annum would not represent reasonable compensation for their services. We think it quite apparent that they, and John E. Helm, petitioner's vice president, were in a large measure responsible for the development and success of the business and that their contribution to its success exceeded that of Helm. Respondent did not question the reasonableness of salaries of $19,995 and $19,655 paid to Helm during the taxable years. Our best judgment, after a careful consideration of all of the evidence, is that $25,000 per annum for each of the Hamptons would represent a reasonable allowance for compensation for the services rendered by them to petitioner during the taxable years, and we have made a finding to this effect. Decision will be entered under Rule 50.